MARIE PONDER CLARK v. PATRICIA PROFFITT CLARK, AND CECIL CLARK, GUARDIAN OF GENE WAYNE CLARK, JOHN LLOYD CLARK, GAMBELL CLARK, GILA CLARK

No. 7424DC747

(Filed 20 November 1974)

1. **Divorce and Alimony § 24— child visitation privileges — consent to modification without showing change of condition**

    Where the parties to a consent custody order agreed to allow the trial court to modify defendant's visitation privileges without a showing of change of condition, they are bound by their agreement and the court properly modified defendant's visitation privileges without such a finding.

2. **Appeal and Error § 49— failure of record to show excluded evidence**

    An exception to the exclusion of evidence will not be considered when the record fails to show what the excluded evidence would have been.

APPEAL by plaintiff from *Braswell, Judge,* 1 April 1974 Session of District Court held in MADISON County. Heard in the Court of Appeals 16 October 1974.

Plaintiff seeks review of an order entered 10 April 1974 modifying certain provisions of a consent custody judgment which had been entered into by the parties and their counsel in open court at a previous trial on 11 August 1972. This case initially arose upon the complaint of the plaintiff filed 3 May 1972 seeking award of custody of the plaintiff's four grandchildren. On that date, upon motion of the plaintiff, an order was entered granting immediate temporary custody of the children to the plaintiff and an order secured prohibiting re-

moval of the children from North Carolina to the State of Alabama by their mother, Patricia Proffitt Clark, the defendant. This order was continued in effect by consent until the date of the trial and until entry of the 11 August 1972 consent judgment.

The consent judgment contains extensive findings of fact based upon evidence produced at the hearing and the admissions of the parties. These findings establish that the defendant abandoned her husband and children on 15 August 1967; that she thereafter granted to her husband the custody of the children by deed of separation; that following her husband's death in 1969 defendant permitted the children to remain in the sole care and keeping of the plaintiff, their grandmother; that during the years 1969, 1970, 1971 and 1972, the children resided continuously with the plaintiff who provided "for their care and keeping, their discipline, their education, their development and their supervision . . . and . . . assumed custodial responsibilities for said children and stood in loco parentis to them; . . . " until the date of the entry of the consent judgment. The findings further establish that during this period of four years the defendant seldom visited or telephoned her children and never corresponded with them or with the plaintiff concerning them. The judgment also finds that by this course of indifference and by "her course of misconduct, incident to her separation from her husband and her state of living in Buncombe County and in Jefferson County, Alabama, in particulars known to the parties and their counsel, disclosed to the court but by agreement not set forth in this order, she, the said defendant, did abandon her said children."

The consent judgment concludes that the plaintiff has properly cared for the children and was "the fit and proper person to have and be awarded their care and custody"; that the defendant mother was "not a fit and proper person to have the care and custody of said children"; that the place of abode of the defendant mother was "not a fit and proper place for the upbringing of the said infant children"; and that it was in the "best interests of the children that their care and custody be awarded to the plaintiff." Upon these findings and conclusions the consent judgment awarded the custody of the children to the plaintiff, made provisions for the defendant to visit with the children with transportation of the children to be provided by defendant's mother, and made provision for the

Clark v. Clark

posting of bond to guarantee that the children not be removed by the defendant from North Carolina to Birmingham, Alabama, the place of the defendant's residence.

The record shows that bond was posted and that the defendant thereafter visited her children regularly as specified in the judgment. No further hearings concerning the custody of the children were held until 3 October 1973, when the case came to trial on the defendant's motion for a change of custody. This motion asserted that on 9 December 1972 the defendant married David Fowler, the man with whom she previously had been living in Birmingham, Alabama, and accused the plaintiff of various acts designed to obstruct and interfere with defendant's visits with her children.

At the hearing on her motion, defendant testified that at the time of the trial on 11 August 1972 and the entry of the consent judgment, she was not married to David Fowler but that within two weeks after he obtained his divorce from his first wife they were married and are now living together as lawfully wedded husband and wife; that at the time of the trial and entry of the consent judgment she had limited income and assets but that since her marriage to David Fowler, she had secured a job from which she derives substantial earnings and that her husband had received several pay raises which had improved their economic condition and their ability to provide for the children; and finally that at the time of the trial she and David Fowler were living together in a two bedroom townhouse but were now living in a three bedroom apartment. Defendant also testified to difficulty in reaching her children by telephone on several occasions and expressed dissatisfaction with the clothing provided by the plaintiff to the children when they visited her on one or more weekends. She further testified to wanting the children to attend her wedding to David Fowler and to facts from which she concluded that the plaintiff was responsible for the children's failure to attend the wedding. Friends of the defendant from Birmingham, Alabama, testified that her general reputation was excellent and that her home always was neat and clean.

The plaintiff and the defendant, Cecil Clark, Guardian of the testamentary estate of the children each testified at length about the care and upbringing the children received from the plaintiff. Other witnesses were tendered by the plaintiff to establish her good reputation and to describe the care, love and attention which she had provided for the children from 1967

until the date of the hearing. At the conclusion of the defendant's testimony and at the conclusion of all the evidence, plaintiff moved for a dismissal or for summary judgment in her favor. Both motions were denied. At this time a suggestion was made by the court that it might be helpful to have the services of a child psychologist. The court deferred rendering any judgment in the matter until the parties decided whether a psychological examination of the children would be desirable and court was "adjourned *sine die*" subject to having the matter "recalled upon notice as necessary."

On 15 February 1974 the defendant filed a motion for entry of order, and upon plaintiff's answer thereto and upon plaintiff's motion to reopen the matter for the presentation of additional evidence suggesting a change of conditions, a second proceeding was held on 4 March 1974. At this hearing the court refused to consider the psychiatric report of one Dr. John Patton, who had interviewed the children at the request of the plaintiff when the parties were unable to agree upon a psychiatrist or psychologist. The court also refused to permit Dr. Patton to be called to give testimony and noted plaintiff's exception, treating the tender of Dr. Patton's report as equivalent to tender of his testimony. Instead the four children were interviewed in open court.

Upon the basis of the testimony of the oldest child, Gene Wayne Clark, then nearly 14 years of age, the court found that he was "insistent in stating his intention to refuse to move from the home of his grandmother (plaintiff) and the community in which he has been reared." The court also noted that Gene Wayne Clark appeared to be "of unusual maturity for his years" and "that all of the children are very close in their love and affection for one another."

Based on these and other findings the court concluded as a matter of law that there had been "a substantial change in circumstances affecting the children" since the order awarding custody of the children to the plaintiff on 11 August 1972; that both plaintiff and defendant and her husband were fit and proper persons to serve as parent(s) to the children but that "a sudden permanent change of custody and place and community of residence for the children at this time could do violence and harm to their welfare and future development" and "that permanent separation of the children from each other at this time would not be in their best interests." It, therefore, was ordered that plaintiff would continue to have custody of the four chil-

Clark v. Clark

dren and that defendant would continue to have the privilege of having her children visit with her at the residence of her parents one weekend every month as per the consent judgment of 11 August 1972. In addition, it was ordered that the consent judgment be modified to the extent that the defendant would have "the privilege of visiting with her children and of having her children visit with her one, two, three or four of them at the same time, in or out of the presence of the children's paternal relatives and in or out of the State of North Carolina, as shall be mutually agreed upon between the parties, on such occasions, in such manner and for such periods of time as shall not interfere unreasonably with school attendance, health, emotional or moral well-being and development of the said children or any of them." It further was stated "[t]hat acts of omission or commission by either the plaintiff or the defendant with respect to any or all of the children which tend to interfere with the development or existence of a natural bond of affecton among the children themseslves, or between any of the children and their mother or their grandmother, shall constitute grounds for such modification of this order as shall, after hearing, appear in the best interests of the said children or any of them." Finally defendant was required to post a bond of $7,500 to insure return of the children to the plaintiff following their visits with defendant and her husband in the State of Alabama.

Additional facts necessary for decision are set forth in the opinion.

*Gudger and Sawyer, by Lamar Gudger, and Ronald W. Howell for plaintiff appellant.*

*Riddle and Shackelford, P.A., by John E. Shackelford, for defendant appellee.*

MORRIS, Judge.

[1] Plaintiff's first assignment of error relates to the denial of her motions to dismiss at the conclusion of the defendant's evidence and at the conclusion of all the evidence. Plaintiff concedes that, nothwithstanding the intentions of the parties to restrict subsequent modifications of the consent judgment the District Court had authority to change the custody provisions therein. *Thomas v. Thomas,* 259 N.C. 461, 130 S.E. 2d 871 (1963). Plaintiff maintains, however, that a judgment awarding custody cannot be modified or disturbed except upon evidence

proving a "substantial change of circumstances." She contends that such a change has not been shown in this case and therefore her motions to dismiss should have been granted. After carefully reviewing the record, we find that plaintiff's motions were properly denied.

We recognize the well-established principle that a change in circumstances must be shown in order to modify an order relating to the custody of a minor child. G.S. 50-13.7; G.S. 50-16.9; *McDowell v. McDowell*, 13 N.C. App. 643, 186 S.E. 2d 621 (1972), and cases cited therein. In this case, however, we conclude that the defendant was not required to show a change in circumstances.

We note that no change in custody was made in this case. In fact the only effect of the order was to modify the visitation privileges of the defendant. In this regard we think Item 4 of the consent judgment of 11 August 1972 is especially pertinent. Item 4 provides as follows:

> "4. This cause is retained for further orders and particularly for entry of special order further specifying the visiting privileges of the defendant, Patricia Proffitt Clark, which said special order only may be entered *without showing of change of condition* but any such special order shall be entered only after appropriate notice." (Emphasis supplied.)

Where the parties have specifically agreed to allow the trial judge to modify visitation privileges of a party without requiring a showing of change of condition, we are of the opinion, and so hold, that they are bound by their agreement. Thus, in this case, even assuming arguendo that defendant was unable to show a "substantial change in circumstances," plaintiff has no grounds for complaint.

[2] The only other question raised on appeal by the plaintiff is whether the trial judge erred in refusing to hear and consider evidence concerning the mental and physical condition of the children, including medical evidence not available on 3 October 1973, but discovered and offered at the 4 March 1974 hearing and prior to the entry of the order of modification. We note that the record does not include the evidence that was purportedly offered and refused. Since appellant did not incorporate the excluded evidence into the record and thus disclose the alleged error, this assignment of error will not be considered.

"An exception to the exclusion of evidence will not be considered when the record fails to disclose what the excluded evidence would have been." *Barringer v. Weathington,* 11 N.C. App. 618, 621, 182 S.E. 2d 239 (1971).

For the foregoing reasons, the order of the trial judge is affirmed.

Affirmed.

Judges HEDRICK and BALEY concur.